Rose, J.
(dissenting). We respectfully dissent. Given the restrictions that LaValle Transportation, Inc. placed upon claimant in this case and this Court’s recent affirmances in two cases involving similar restrictions (see Matter of Harold [Leonard’s Transp. — Commissioner of Labor], 133 AD3d 1069 [2015], lv dismissed 26 NY3d 1136 [2016]; Matter of Wilder [RB Humphreys Inc. — Commissioner of Labor], 133 AD3d 1073 [2015]), we disagree with the majority’s reversal of the Unemployment Insurance Appeal Board’s decisions regarding claimant. Here, as to claimant, the indicia of control retained by LaValle are numerous and essentially the same as those in Matter of Harold (Leonard’s Transp. — Commissioner of Labor) (supra). The record shows that claimant was operating a truck that he leased from LaValle, and its lease imposed significant restrictions on his use of that vehicle. He was not permitted to sublease or to allow any other party to use or operate the truck without LaValle’s express consent, and he could use it with another trucking company only if that company complied with LaValle’s requirements and had its written approval (see id. at 1070). The lease also granted LaValle the right to collect all proceeds from the operation of his truck, to deduct a weekly amount of $200 to fund a repair reserve and to assign the lease and the truck to a third party while claimant had no right to assign any of his rights under the lease.
In addition to the lease, there was a transportation service agreement between claimant and LaValle that further restricted his work. That agreement stated that LaValle had “exclusive possession, control, and use of” the truck, prohibited claimant from adding lettering or advertising on the truck without LaValle’s written authorization and again limited all operation of the truck to claimant or a qualified employee of claimant previously approved in writing by LaValle. Most significantly, and contrary to the majority’s view that “the drivers were not required to work exclusively for LaValle and were free to accept jobs with other companies,” claimant’s service agreement stated: “Equipment covered by this [a]greement shall be used to provide transportation services to LaValle and other parties provided LaValle dispatches all loads” (emphasis added). In the same subparagraph, the agreement also granted LaValle the right to make the truck with a driver available to any other authorized motor carrier and authorized LaValle to “act on behalf of and bind [claimant] in the . . . execution of *1222 any further transportation service agreement entered into by Lavalle and any other authorized carrier.” Claimant’s compensation for his work was to be paid weekly by Lavalle in accordance with an attached schedule specifying his rate at 70% of gross revenue received by LaValle. The transportation service agreement further authorized LaValle to take physical possession of the truck if claimant “in Lavalle’s opinion . . . fail[ed] to complete transportation of commodities in transit,” and claimant waived any recourse against LaValle for such action.
Claimant also was bound by a two-year noncompetition restriction. This restriction forbad claimant from divulging to anyone the identity of LaValle’s customers “for any purpose whatsoever” during the agreement and for two years thereafter. Further, the clause broadly forbad claimant from “competing] with Lavalle” or “injur [ing] Lavalle’s business” for two years after the termination of the agreement. In addition, the geographical reach of the noncompete restriction was expansive, applying to “any state in which [claimant] has performed services pursuant to [the] [a]greement.” When read as a whole, the clause could be construed to forbid claimant, a long-haul trucker, from driving any route that he had ever driven as a part of his work for LaValle. Accordingly, the record here presents us with a noncompetition restriction placed upon claimant that is more restrictive as to scope of activities, time and geographical reach than the noncompetition restriction examined in Matter of Harold (Leonard’s Transp. — Commissioner of Labor) (133 AD3d at 1070). Moreover, although claimant had no set schedule and could decline work proposed by LaValle, he was expected to inform LaValle daily of his activities while hauling freight, to contact LaValle if he anticipated a delay of delivery and to file paperwork weekly concerning many aspects of his work (see id. at 1070-1071). Inasmuch as these indicia are so similar to those considered and found to support the Board’s determination of an employer-employee relationship in Matter of Harold, a similar result should occur here (see id. at 1069; Matter of Wilder [RB Humphreys Inc. — Commissioner of Labor], 133 AD3d at 1074; see also Matter of Mitchum [Medifleet, Inc. — Commissioner of Labor], 133 AD3d 1156, 1157 [2015]; Matter of Youngman [RB Humphreys Inc. — Commissioner of Labor], 126 AD3d 1225, 1226 [2015], lv dismissed 25 NY3d 1192 [2015]; Matter of Duffy [North Am. Van Lines — Hartnett], 172 AD2d 914, 914 [1991]; Matter of Davis [RTC Transp. — Roberts], 111 AD2d 1030, 1031 [1985]).
*1223 Finally, while it was within the Board’s power to extend its conclusions to all those “similarly situated” (see Labor Law § 620 [1] [b]; Matter of Mitchum [Medifleet, Inc. — Commissioner of Labor], 133 AD3d at 1157-1158), the majority considers the circumstances of other LaValle drivers regardless of how dissimilar their circumstances are to those of claimant.* In our view, the issue of whether drivers other than claimant are or are not employees of LaValle depends upon whether similar restrictions were actually imposed upon them. As the majority points out, the record shows that some of LaValle’s drivers do not have the same restrictions. Thus, it is unlikely that they would be “similarly situated,” and we would agree with the majority as to them.
Accordingly, we would affirm the Board’s decisions but only as they determine claimant’s relationship with LaValle and those who are actually similarly situated.

 Stating, for example, that "about 40% of the drivers owned their vehicles and, of the remaining 60%, only about half leased from LaValle.” The record is clear that claimant leased his vehicle from LaValle.